968 F.2d 1480
 John P. MALONE, Plaintiff-Appellant,
v.
COUNTY OF SUFFOLK, Patrick Henry, James Catterson, Dennis
McHugh, Roger Leigh, Village of Nissequogue, Gordon T. Hall,
Mayor, James J. McDonough, Deputy Mayor, Richard H. Knight,
Trustee Village of Nissequogue, C. Joseph Goodwin, Trustee
Village of Nissequogue, John J. McNulty, Trustee Village of
Nissequogue, Kenneth McSweeney, Trustee Village of
Nissequogue, Paul C. Matthews, Justice Village of
Nissequogue, Robert M. Baum, Justice Village of Nissequogue,
Joseph L. Schroeher, Clerk and Treasurer Village of
Nissequogue, Thomas J. Lynch, Police Officer in Charge, John
Does, 1-4, Defendants-Appellees.
 No. 1092, Docket 91-9249.
 United States Court of Appeals,
Second Circuit.
 Argued March 12, 1991.
Decided June 15, 1992.
 
 James P. Malone, Rockville Center, N.Y., for plaintiff-appellant.
 Scott M. Karson, Cahn, Wishod, Wishod & Lamb, Melville, N.Y., for defendants-appellees.
 Before: OAKES, WALKER, Circuit Judges, and POLLACK, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff-appellant John P. Malone appeals from a November 12, 1991 judgment of the United States District Court for the Eastern District of New York (Arthur D. Spatt, Judge ), granting summary judgment to defendants-appellees County of Suffolk, et al., and dismissing the complaint. 1991 WL 348412. We reject Malone's Fourth and Sixth Amendment claims and accordingly affirm the judgment of the district court.
 
 BACKGROUND
 
 2
 Dennis McHugh and Roger Leigh, former police officers for the Village of Nissequogue and defendants-appellees in this action, arrested plaintiff-appellant John P. Malone on December 12, 1984 for the crime of driving while intoxicated. The District Court of Suffolk County, after a trial at which McHugh and Leigh testified, entered a January 27, 1986 judgment convicting Malone of driving while intoxicated in violation of New York Vehicle and Traffic Law §§ 1192(2) and (3) and sentenced him to three years probation, revocation of his licence, and payment of a fine. In an unpublished opinion dated October 22, 1987 the Appellate Term of the Supreme Court of the State of New York affirmed, see People v. Malone, No. 86-184 (N.Y.App. Term Oct. 22, 1986), and, on March 20, 1987, the New York Court of Appeals denied leave to appeal.
 
 
 3
 The current action, commenced on July 3, 1991 in the United States District Court for the Eastern District of New York, is the latest in a series of lawsuits brought by Malone in response to his conviction. The United States District Court for the Eastern District of New York and the Supreme Court of Suffolk County have already dismissed civil actions. Malone's present complaint alleges civil rights violations under 42 U.S.C. § 1983, RICO violations under 18 U.S.C. § 1961, and various pendant state law claims. He requests compensatory and punitive damages as well as reversal of his conviction. Judge Spatt, in a decision entered November 4, 1991, awarded summary judgment to defendants and dismissed the complaint. Malone appeals only from that portion of the district court's November 8, 1991 judgment dismissing his civil rights claim under 42 U.S.C. § 1983.
 
 
 4
 Malone asserts two claims under 42 U.S.C. § 1983. First, he claims that McHugh and Leigh, not being lawful police officers, violated his constitutional rights in arresting him. The district court construed this as a Fourth Amendment claim of unlawful seizure, a characterization with which Malone agreed below. See Malone, Transcript at 21 (Nov. 1, 1991). The complaint secondly alleges that defendants deprived him of his Sixth Amendment right to a fair trial by failing to inform him of McHugh and Leigh's unlawful status prior to their testimony.
 
 
 5
 The relevant facts regarding McHugh and Leigh's legal status as police officers are as follows. The Village Board of the Village of Nissequogue appointed McHugh and Leigh "Acting Police Officers" on November 18, 1982, and July 2, 1984, respectively. However, the Board made these appointments without consulting the civil service list of eligibles as required under New York law. The two were sworn in as "police officers" and thenceforth carried out the duties of that office. In the fall of 1986, the Suffolk County Department of Civil Service informed the Village that it considered McHugh and Leigh illegally hired. Moreover, in a report dated November 28, 1986, and filed March 2, 1987, the Comptroller of the State of New York notified the Village that it had failed to submit its 1985-86 payrolls for civil service certification. Shortly thereafter the Village submitted its payroll, whereupon the Department of Civil Service, by letter dated July 10, 1989, refused to certify the payroll and specifically disapproved payment to McHugh and Leigh.
 
 
 6
 The Village, joined by McHugh and Leigh, challenged the Department's decision before the Supreme Court of Suffolk County which, by judgment entered October 3, 1989, annulled the Department's determination and ordered certification of the payroll. See Inc. Village of Nissequogue v. Suffolk County Dept. of Civil Service, 145 Misc.2d 382, 546 N.Y.S.2d 916 (N.Y.Sup.Ct.1989). The Appellate Division found McHugh and Leigh's appointments defective and reversed on January 22, 1990. See Inc. Village of Nissequogue v. Suffolk County Dept. of Civil Service, 157 A.D.2d 784, 550 N.Y.S.2d 384 (1990), aff'd 77 N.Y.2d 915, 569 N.Y.S.2d 593, 572 N.E.2d 34 (1991). The Village accordingly terminated McHugh and Leigh by resolution of its Board of Trustees dated January 28, 1990.
 
 DISCUSSION
 
 7
 Malone's current claims arise from the defects in McHugh and Leigh's appointment. We consider first his claim that an arrest by unlawfully appointed police officers constitutes an unreasonable "seizure" under the Fourth Amendment. Cf. Dunaway v. New York, 442 U.S. 200, 207-208, 99 S.Ct. 2248, 2253-54, 60 L.Ed.2d 824 (1979); Reed v. United States, 364 F.2d 630, 632 (9th Cir.1966). In rejecting the claim, Judge Spatt relied principally on New York's de facto officer doctrine which provides that "the acts of one who carries out the functions of a public office under color of authority are generally valid as to third persons and the public, and hence immune from collateral attack, notwithstanding irregularities in the manner in which the officer was appointed." County of Ontario v. W. Finger Lakes Solid Waste Mgmt. Auth., 167 A.D.2d 848, 849, 561 N.Y.S.2d 954, 955 (1990) (citing cases).
 
 
 8
 Judge Spatt correctly looked to New York law to determine the status of the police officers as it may have affected the constitutionality of the arrest. See United States v. Watson, 423 U.S. 411, 420 n. 8, 96 S.Ct. 820, 826 n. 8, 46 L.Ed.2d 598 (1976); United States v. Di RE, 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1948); United States v. Viale, 312 F.2d 595, 599 (2d Cir.1963). Under New York law, a de facto officer who acts under "color of authority," County of Ontario, 167 A.D.2d at 849, 561 N.Y.S.2d at 955, is distinguished from a mere usurper who "simply acts as an officer without any color of right and [whose] acts are void for all purposes." 19 N.Y.Jur.2d Civil Servants § 251. The dispositive question is: into which category did McHugh and Leigh fit? If, as the district court held, they were de facto officers, then the arrest was lawful under state law and did not offend the Fourth Amendment. See Commw. of Pa. v. Pontious, 396 Pa.Super. 15, 21, 578 A.2d 1, 3 (1990) ("[u]nder the de facto doctrine, a law enforcement officer hired in violation of the law may legitimately exercise search and seizure powers"). If they were mere usurpers, then all their police actions, including the arrest, were invalid.
 
 
 9
 By bringing this action under 42 U.S.C. § 1983 Malone all but concedes that McHugh and Leigh acted under color of authority, since this provision requires that defendants have acted under color of state law. See 42 U.S.C. § 1983 (1981); Sykes v. State of California, 497 F.2d 197, 200 & n. 2 (9th Cir.1974). Other factors establishing McHugh and Leigh's color of authority include: their full performance of their duties, see Kessel v. Dodd, 46 A.D.2d 645, 646, 359 N.Y.S.2d 594, 597 (1974); Matter of Collins, 75 A.D. 87, 89-90, 77 N.Y.S. 702, 703-704 (1902); official recognition of and payment for their services, see Collins, 75 A.D. at 89-90, 77 N.Y.S. at 703-704; and the fact that the defects in their title had not yet been established at the time of the arrest, see Dolan v. Mayor, 68 N.Y. 274, 279 (1877). Malone and Leigh acted under color of authority, and were de facto officers.
 
 
 10
 We reject Malone's contention that New York's de facto officer doctrine does not apply in the case of non-managerial police officers. Important policies underlying the doctrine are served in this context. In the case of Sylvia Lake Co. v. Northern Ore Co., 242 N.Y. 144, 147, 151 N.E. 158 (1926), for example, the New York Court of Appeals refused to invalidate the judgments of a Justice of the New York Supreme Court holding defective title to his office, on the grounds that "[t]he supremacy of the law could not be maintained or its execution enforced if the acts of a judge having a colorable but not a legal title were to be deemed invalid." Other courts have similarly acknowledged the role of the de facto officer doctrine in preserving the orderly functioning of government. See, e.g., E.E.O.C. v. Sears Roebuck & Co., 504 F.Supp. 241, 260 (N.D.Ill.1980). This policy is fully implicated in the case of police officers acting under imperfect title, since invalidation of their actions would undermine the finality of convictions and would engender dilatory and costly lawsuits challenging the credentials of arresting officers. See 63A Am.Jur.2d Public Officers and Employees § 578 (1984). Judge Spatt's application of the de facto officer doctrine was therefore consistent with the policies expressed by the New York Court of Appeals in Sylvia Lake. Courts in at least one other jurisdiction also apply the doctrine to non-managerial police officers. See, e.g., Pontious, 396 Pa.Super. 15, 578 A.2d 1.
 
 
 11
 Malone also claims that defendants' failure to timely inform him of the defects in McHugh and Leigh's appointment violated his rights under the Sixth Amendment by preventing full cross-examination of these witnesses. See Pointer v. Texas, 380 U.S. 400, 403-406, 85 S.Ct. 1065, 1067-69, 13 L.Ed.2d 923 (1965). At the time of Malone's trial, however, defendants would have had little to tell. The Department of Civil Service did not begin to question the officers' status until the fall of 1986, well after Malone's January 27, 1986 conviction. See Village of Nissequogue, 145 Misc.2d at 383, 546 N.Y.S.2d at 917. Moreover, even if the Village had known and disclosed this information it would have been of no appreciable value on cross-examination. At the time of the trial Malone could have pointed only to an unresolved allegation. The prosecution could have easily deflected this weak attack by invoking the de facto officer doctrine. We accordingly reject Malone's Sixth Amendment claim and affirm the judgment below.
 
 
 
 *
 Judge Milton Pollack of the Southern District of New York, sitting by designation